Daniels v. Walt Disney Company is next for argument. May it please the Court, Counsel, I'm Patrick Ahrens, and I represent the plaintiffs, appellants, Denise Daniels, and the Moodsters Company. I'd like to reserve three minutes for rebuttal. Whether a character is protected by copyright is a fact-intensive issue. And here, in paragraphs 75 to 105, and paragraphs 148 to 342 of the amended complaint, the unique, distinctive, and indisputably original elements of the Moodsters characters are detailed. Yet the District Court disregarded those facts on Disney's Rule 12 motion by misunderstanding its role under this Court's Hlicky decision. And we ask that this Court reverse and remand in full so this case can proceed on the merits. I want to focus on three particular errors the District Court made in my time here. And the first is that the District Court misapplied its Rule 12 plausibility analysis by disregarding the fact that the traits and characteristics of the Moodster characters had never been done before. The fundamental copyright issue in front of the District Court and the fundamental copyright issue in front of this Court is whether the amended complaint sets forth a plausible claim that the Moodster characters as an ensemble and individually are protected by copyright. The focus needs to be on plausibility. And yet, what the District Court did is the District Court decided the case on the merits and in doing so disregarded that the Moodster characters had never been done before. By definition, emotions are abstract. We don't know how many exist. We don't know what they look like. There's no color. There's no gender. And we alleged in detail in the amended complaint that no work before had ever personified emotions in the way Denise Daniels did. In fact, when you look at excerpts of record 93 to 94 and 108, we make particularized allegations to that effect. Why wasn't the District Court entitled to simply look at the Moodsters and conclude that the characters were not sufficiently delineated as recognizable under the second prong of the TAL test? Well, for a variety of reasons, Your Honor. And also given the fact that the appearance of the characters changed over time. Right. Well, there's a lot to unpack there. First and foremost, Halicki resolves this question because Halicki indicated this is a fact-intensive issue, and on Rule 12, District Courts don't resolve fact-intensive issues. Moreover, when you look at what this Court said in Halicki, where you had very minimal thematic attributes, something like an inanimate car, which does not speak, does not emote, but simply things go invariably wrong in the movie, that's what this Court said raises a fact-intensive question whether Eleanor, that car in Halicki, is protected. And here, the allegations, the detailed allegations of the complaint are far more expressive, far more detailed, far more delineated than those sort of thematic attributes in Halicki. What I would also add is when you look just at this Court's past. Let me go back to Halicki, though. Wasn't one of the key issues there is that the plaintiff wasn't the lawful holder of the copyright? Well, that was on appeal. That was an issue. And then on appeal, it was teased out, is Eleanor actually copyrighted as a character? Right. But absent being the copyright holder, it doesn't really matter what's protectable in terms of the infringement analysis. Right. But this Court undertook the analysis of whether Eleanor was a copyrighted character. Here, too, this is not a substantial similarity infringement issue on appeal. The issue is whether the moodster characters in the first right are protected by copyright, whether they are copyrighted characters. And that's the identical issue this Court addressed in Halicki. Yeah, I mean, I guess I'm having trouble putting that much weight on Halicki because the real issue is, is it the copyright holder? And then in that particular case, the district court had not determined that, correct, in terms of the infringement analysis. Well, but this Court identified, again, there was no infringement issue. It was whether the plaintiff owned the copyright, if the copyright existed. Correct. And this Court indicated the Eleanor character is likely protected because it does have widely identifiable traits because it is especially distinctive because of these minimal thematic attributes. However, it remanded because it's a fact-intensive question. And I don't think this Court should ignore, then, what the district court did on remand. The district court held summary judgment on that exact issue and decided this is a fact dispute because it's... Well, but, you know, every one of these cases, you can find determinations made on a 12b-6 in a copyright case, and there's not some irrefutable rule that every time it's going to be a factual issue. So, again, I think it depends on how about this case. And on this case, there are detailed allegations about what delineate and make up these characters, and those allegations deserve deference and they deserve to be assessed for plausibility. And if there is going to be argument about whether these characters are original or they've been done before or they're generic or stereotypical, as Disney argued, as the district court addressed, that should be done on a proper record with facts, with evidence, with testimony, with experts. And we offered all of that in the complaint, and it was disregarded. Let me ask you a timing question. The second generation of the movie toys were actually released after the development of the Inside Out movie. Does that matter? The second generation was first created before the Inside Out movie was released. There were some toys that may have been sold after the Inside Out movie was released. What I would suggest is that the second generation does not matter because by statute a copyright exists upon creation, and that's when the term is created once the court traits and characteristics are fixed in a tangible medium. If they are considered, then all they do is they carry on and there is a plausible inference. They may well be a new copyright, for example. Or a derivative. As a derivative of work, that's right. But if you are going to look into the future, which I suggest that the court should not do just based on statutory law as well as strong copyright policy, they support the Mootser's claims here. Before I move on, what I would like to just observe in terms of going back, Judge Parker, to your question about what's the district court's role here. What I'd indicate is Judge McEwen, as you observed in Sheffens v. Stewart, that to be sure judicial attempts to categorize artistic creations are fraught with difficulties. And that's the same observation that this court made with force in Hall v. Swift last week, remanding a case on a 12b6 motion. That with all due respect, and looking again to North Coast v. Jason Maxwell, that these are not fact disputes, for instance, in a geometric fashion design about whether that shirt has those geometric labels, but it's for a fact finder to decide. And specifically, the Seventh Amendment attaches to copyright cases. So to the extent that there are detailed factual allegations in this complaint that give rise to a copyright claim, it is woefully incorrect to decide that on Rule 12. I would also identify that this is an unprecedented procedural decision, because every copyright character decision from this court, the copyright owner had the benefit and privilege of presenting their case on a full record. And similarly, even when we look outside of this court circuit, neither the district court nor Disney has identified any copyright character case in which the district court decided the merits of it on Rule 12.6. And so what I'd like to do is shift to a second legal error. So it's your position that it's just not appropriate, what, in this case or in any case, for the district judge to look at the characters and question and determine whether the second prong has been met. Is that invariably an area where the parties are entitled to present evidence? I'm sure there are absurd examples that would arise where there could be a dismissal on Rule 12.6. But what I would submit is when there are detailed allegations under the toll elements, toll factors, and the characters, or excuse me, then the district court should assess whether the claim is simply plausible and not render its own merits-based decision on that fact alone. I'd like to move to a second error that I wanted to highlight, which is that the district court erred when it applied, quote-unquote, a rigorous standard. And it was an incorrect heightened standard that the district court applied to the analysis here. And that's clear in both of the court's opinions. I think it's fundamental and critical to emphasize the difference between literary characters and graphical and animated characters. Because when you have a literary character, as in the Warner Brothers case, you're much closer to the idea and not an expression of the idea. But as this court held almost 50 years ago in Air Pirates, once you have animated characters, you're far greater, you're showing the expression of that character. And there's far greater, a far more lenient standard to protection. In fact, in Air Pirates, it addressed Mickey Mouse, but when you read the case closely, it was Disney that was vociferously arguing to protect 21 characters. Characters including Max Hare and Toby Tortoise, which are not household names, and I would submit don't have the level of detail and characteristics and traits that the moodster characters do, but this court nonetheless found those protected. In addition, I would go back to Heliki. It's certainly not a rigorous standard if an inanimate object that invariably has strength or endurance is going to be a protected character. And when you look at cases outside this circuit, the same is true. You have comic book characters in Gaiman. You have an anthropomorphic seagull in Bach. You have Bill, which is dressed up in a dollar bill costume in a bank commercial, protected. You have Jim Brockmire in a four-minute YouTube skit, which was protected. And before I move on, I just wanted to highlight my third legal error, very brief. The district court erred when it did apply a fame-based standard to these characters. Statutory copyright law establishes that a copyright exists upon creation when the character traits and characteristics were first fixed in a tangible medium, as was the case here in 2005 and no later in 2007 when the 24-minute pilot episode existed. And it would have serious policy consequences too, because if you do apply a fame-based standard, it's going to be dangerous for individual artists and creators, because the test for a copyright will depend on the fame and popularity and not the originality and creativity. Before you sit down, I wanted to ask you about this implied contract claim. It seems that the only thing alleged that there was a conversation, but without any details as to the conversation. Is there anything else beyond that? Yes, there is, Your Honor, and that's not the basis for the court's dismissal, but there is because Disney actually requested more materials, and that further indicates kind of the understanding in the contract that was undertaken here. So you're saying that Disney requested more materials from your client? That's right, Your Honor. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Mark Yohalam on behalf of the Walt Disney Company and Pixar. What the district court did here was entirely proper. In Towell and Rentmeester, this court has made clear that courts are well-equipped to resolve the legal question of a character's copyrightability, and that that question can be resolved at the 12B6 stage where there aren't disputed facts, and when the facts in the record, including the works in question, are sufficient to make that determination. Here, the characters at issue fall so short of the Towell standard that it was entirely appropriate for the district court to rule as a matter of law that they were not independently copyrightable. Now, I want to be clear about one point at the outset, which is that no one is saying that there is no copyright in the moodster's Bible, in the moodster's pilot, in the moodster's books, in the moodster's toys. Works get a copyright when they are fixed. The question is whether the characters independent of that work are entitled to their own copyright, and as this court has long made clear and recently reaffirmed in Towell, that is the exception, not the rule, and these characters are not such exceptional ones. Now, my opponent made the point that the later moodsters should not be considered in determining the copyrightability of the character. Respectfully, that is flat-out wrong. It is a key holding in Towell that where a character has appeared in multiple depictions and multiple works, courts have deemed the persistence of a character's traits and attributes across those works to be key in determining whether the character qualifies for copyright protection. I hear that and I read that, but there is some aspect of that that kind of collides with the copyright principle that once fixed, at least at the outset, that that character is the character. So are you saying that only applies in the case of character development? It certainly applies in the case of characters who have been depicted in multiple works. That's just a square holding of Towell, and I don't think the court could get around it. And incidentally, it's not like Towell took that from the ether. Towell drew that from an existing body of cases that had made the same point. And I think it makes perfect sense, and the reason why is this. What you are looking for substantively is how well delineated these characters are and how recognizable those traits are. And if they are especially well delineated and widely recognizable, then you would say they're copyrightable. But the question is, what is recognizable and where are those lines drawn? And when you have a character depicted over and over again, And the key thing here I think that is important to keep in mind is that there's no dispute that plaintiffs are claiming that each of these instances of the character is the same character. And so the question is, what actually is that character? And I think the R character is sort of a good example of how you can see how the persistence comes out. So initially there is this character named Rory. Rory is red. Rory's key defining feature is that she has two antennae. Those antennae act as a mood barometer. She has two pigtails. She has a lightning bolt in her hand. And her name is Rory. She is also the bravest of the moodsters. By the second iteration of the Bible and the pilot, she is no longer called Rory. She is now called Rizzy. And she is no longer the bravest of the moodsters. But she still looks more or less the same. By the third iteration, she is now called Razzy. Is this what you're talking about, the 2015 iteration? Correct. And by that iteration, she is now called Razzy. She has no pigtails. She has no antennae. She now has a Sherlock Holmes style deerstalker cap. She now wears a capelet. She has in her hand some technological devices that she uses. She no longer exists in a fantasy world. She now lives in a makeshift headquarters under a child's bed as sort of a monster under the bed. And so what are we left with? We know what we're left with for two reasons. One is the court, as your honors have said, can just look at the characters and see. But it's actually alleged in the complaint as well that what we are left with, and it's in paragraph three, is the idea of a character who has a color associated with a mood, who is a biped, but isn't human. That is not especially well delineated. Well, we know that you can't copyright ideas. Correct. But I want to ask you, there is a difference between recognizability and fame, isn't there? Yes. Okay. And so would you agree with the other counsel that fame is really not the standard for benchmarking whether or not a character has recognizability? I'm not sure I would agree. It's certainly something the court has considered in all of these cases. It's certainly something that was explicitly part of the reasoning in Rice, was that this character had only been seen by 17,000 people on some homemade VHS tapes. And so it is a factor the court has looked at. And the reason why I'm sort of reluctant to concede the point is that just at a big picture level, this case is so different from all of the other character copyright cases. All of those cases came to this court where the very business model at issue in the litigation presumes the widespread recognizability of the character at issue. There's no point making knockoff Eleanor cars from Gone 60 Seconds, which were being sold as Eleanor from Gone 60 Seconds, unless people knew who Eleanor from Gone 60 Seconds is. There's no point in making knockoff Batmobiles unless people know what the Batmobile is. There's no point in making a movie demeaning Mickey Mouse unless people know who Mickey Mouse is in the Air Pirates case. In the James Bond case, the casting call said, we are looking for actors who look like a James Bond type. In the Jonathan Livingston Siegel case, it's not an anthropomorphic Siegel. It's one of the most famous characters ever. That may be what the economic incentive is for knocking off a character, of course, is its fame. But that doesn't mean that in the abstract, you couldn't have a copyrightable character with defined characteristics that remain the same and recognizable over time, correct? I think that's true. But the reason why I think that big picture informs the doctrine is that even in those cases where what we are talking about are characters who you could almost stipulate are widely recognizable and well delineated, courts still work through them  that require rigorous analysis, not slam dunks. Here we have these characters who over their lives have been so stripped of distinctive features that they aren't well delineated, but also have just no recognizability at all. What the plaintiff's brief says is that kids can recognize the character on screen as not being a different character. If Razzie walks in, you know it's not Snorf. Razzie is red and Snorf is purple or whatever. But that surely can't be the text. I mean, what I understand at bottom my opponent to be saying is that if during his argument, I had doodled a character on my piece of paper and written next to it, proud, lives in a fancy house, often goes on adventures, that that would be a copyrightable character. Not just that my doodle would be a copyrighted work, but that now this character, who could be nameless as far as they're concerned, would be a copyrightable character. And that would just be a radical transformation. I mean, it has always been said that the norm is that characters are not copyrightable. As we cited the legislative history, Congress's understanding was that the overwhelming majority of characters would not be copyrightable. But what this is doing is basically saying if a work can be copyrighted, and that work contains a character, and that character isn't just like an extra or the animation equivalent of an extra, it now has a freestanding copyright. And that, I think, creates enormous problems. The problems are evident in this case, which is that they are attempting to occupy the field of angry red bipeds and say that that is their character and any angry red biped is now theirs, notwithstanding the fact that we have the Queen of Hearts and Alice in Wonderland, the angry red bird and angry birds, the red hulk in comic books, devils and demons in all manner of mythology. This angry red character has been around for a long time. And we don't copyright characters like that. It is only when a character really becomes sort of... I mean, the truth is, in every case, it's been a character who has become an integral part of the popular culture. And then we say, okay, in order to protect against economic misappropriation, we are going to recognize a copyright in this character. It's never been the case that it's just you've jot down a character and now you own it. He also invokes the thing that we hear often is that judges are not good judges of copyright. You know, going back to Holmes, and it's repeated over and over. I think it boils down to, though, is it possible for a court to determine on a 12b-6 whether a character is copyrightable? And your view is... Absolutely. I haven't heard anything that explains why this would be different at a summary judgment stage. If you look at... It's true, the cases that are character copyrightable cases, strictly on that issue, we've only found, I think, the Activision case, which is a district court case, where it was done at the 12b-6 stage. But the ones that came before the court on the summary judgment record, they were looking at the exact same things that this court's looking at. It's just a question of the character. Look at the works. What is the character? What is the work? And in fact, in Rice, they tried to turn it into a duel of experts. The district court refused to consider the expert testimony, and this court said that's fine because the district court properly just compared the works and applied the standard, and the experts wouldn't have added anything to that. And I think the Rintmeester case, a recent case from this court, which we cite in our brief, it's not a character copyright case. But it is a factually intensive issue, just as character copyright is. And the court first rejects the argument that dismissal at the pleading stage is rarely appropriate in copyright cases, and then notes that dismissal at the pleading stage is by no means unprecedented in such cases. Lists a bunch of instances, and says this is not a case in which discovery could shed a light on any issues that actually matter to the outcome. And I want to be sure I heard you correctly a moment ago. It's essentially your position that fame is indispensable. I'm not sure it's indispensable. It is a factor that the... So wide recognizability is a required factor under power. I'm not sure that that necessarily requires fame. I wouldn't ask the court to add that. I would just do what the district court did, which was not imposing a fame requirement, but just asking, among other things, are these characters widely recognizable for these traits? I would submit to the court... So what Tao says is they have to be recognizable as the same character wherever they appear. Over time. Over time. But also that they have to be recognizable, again, as the same character. Respectfully, I think this is an easy one for a court to decide. You look at the book involving the 2015 characters and look at how the R character at that stage, called Razzi, is depicted and behaves, and compare that to how Rory is depicted and behaved in the Bible, which they say is the same character. And I defy a court to say that anyone would say, oh yeah, those are definitely the same character. And again, I think that's still giving some benefit of the doubt to it, because that would be eliminating the fact that many of those traits have sort of been erased over time as well. I think an additional consideration I would note, we have not really talked about this ensemble question, but the ensemble case that they rely on primarily is the Rocky case. The Rocky characters were both individually well-delineated and well-delineated as an ensemble. I haven't seen any case in which you can take characters who are not individually well-delineated and mush them together into a well-delineated ensemble. But here, I actually think they fare worse as an ensemble than as individuals, because at the stage of the Bible, that is the initial Bible and the second iteration of the Bible, and the pilot as well, there are actually six moodsters. Mudini is described as the oldest and wisest of the moodsters, and she is sort of the mater familius of this group. And she's just gone by the book version. By the book version, they've transformed from basically kids in a theme park to detectives living under a bed, and you've deleted one of the key characters. So I think whether considered as an ensemble or individually, the district court properly could and did resolve this at the 12b6 stage. Before you sit down, would you address the dismissal of the implied-in-fact contract claim? Yes. So I think this one is also a relatively straightforward issue for the following reason. Desney holds there cannot be an implied contract when the idea man, or in this case idea woman, blurts out his or her idea. And that is so, as this court held in Binet and as the California Court of Appeal held in Blaustein and Thompson, that the disclosure of the idea to a substantial segment of the public would tend to destroy any further marketability of that idea. Here, the complaint alleges at paragraph 73 that Disney-Pixar started on Inside Out in 2010. It's undisputed that the pilot episode was put on YouTube in 2007. So I am unaware of any implied contract case that says that an idea woman can offer the idea gratuitously to the whole world via YouTube and then say, but I'm also going to demand payment when one subset of the whole world later uses that in a film. And I think it's only district court cases that we have, but I think the Quirk and Alexander cases are right on point here. Quirk says voluntary wide public distribution of his ideas before defendants began working on their movie defeated the implied in fact contract claim. So I think this is just a case where the fact that she was giving the idea away for free means that she can't also charge Disney-Pixar for it. Thank you. Thank you, Your Honors. So what we heard, especially on the Rory character, is a clear fact issue. You have a Disney character. I'm not sure that's true. Can you help me understand how a character that changes from year to year, changes over time, can be sufficiently delineated to be recognizable as the same character wherever it appears? Absolutely, because almost every character case in this Court's jurisprudence addresses dramatic changes among characters. James Bond changed dramatically. The Batmobile changed dramatically. At one point in Towel, it was a tank. Godzilla, which is a copyrighted character, went from evil to being good. There's nothing more dramatic than that, and that's why, Your Honor, I would say the sort of nuanced differences that Disney's pointing out are irrelevant to the core character traits that we identified in excerpts of Record 101, 119, 129, 139, 149, none of which were addressed by the District Court, and that's why it's a fact issue. And Disney may very well characterize the character one way, but that is what a competing factual determination should be. But there really aren't disputed facts here. I mean, the characters are what they are, correct? They are what they are. And they have changed over time. Would you agree with that? Minor differences. Well, they've changed. Just as James Bond has changed dramatically. Okay. May I briefly wrap up, Your Honor? Please. There were no disputes when you look at the Hall case about what the lyric was. There's no disputes about the geometric design in the North Coast case. But this court held it is not proper for the District Court to decide the validity of a copyright, even when those facts aren't in dispute, because this all goes to originality, which is the cornerstone of copyright law. Let this case proceed past the pleadings. Let Denise Daniels testify. Let us cross-examine Disney's witnesses. Copyright law is meant to incentivize creative works, and this is indisputably creative and original. Thank you. Thank you. Thank you both. Thank you both for the briefing as well as your argument. Daniels v. The Walt Disney Company is submitted.
judges: Parker, Farris, McKeown